1  Michael S. Warda, CSB #176360
2  *mike@wardalaw.com*
   MICHAEL S. WARDA,
3  A Professional Law Corporation
   2350 W. Monte Vista Avenue
4  Turlock, California 95382
5  Telephone: (209) 667-1889
   Fax: (209) 667-1809
6
7  Attorney for Plaintiff,
   TOMAS TRUJILLO dba
8  CARMELITAS ORIGINAL SALSAS

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| TOMAS TRUJILLO, dba Carmelitas Original Salsas,<br><br>Plaintiff,<br><br>vs.<br><br>INTERMEX PRODUCTS USA, LTD.; PEPPERS UNLIMITED, INC.; JUAN CARLOS LORENZO, an individual; JOHN BRANCH, an individual; DIEGO LORENZO, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; EXPRESS WARRANTIES; AND FRAUD** |

Plaintiff, TOMAS TRUJILLO, dba CARMELITAS ORIGINAL SALSAS (hereinafter "Plaintiff") complains and alleges against Defendants, INTERMEX PRODUCTS USA, LTD.; PEPPERS UNLIMITED, INC.; JUAN CARLOS LORENZO, an individual; JOHN BRANCH, an individual; DIEGO LORENZO, an individual; and DOES 1 through 50,

1

inclusive (hereinafter "Defendants") as follows:

## I. PRELIMINARY ALLEGATIONS

1. Defendants sold produce to Plaintiff which contained mold, discoloration, was expired, and contained other defects with the knowledge that Plaintiff would ship, without further inspection, the same produce to food suppliers such as Sysco Foods Los Angeles, who in turn would without further inspection distribute the produce to local restaurants for consumption by the general public.

## II. JURISDICTION AND VENUE

2. Plaintiff is further informed and believes and thereupon alleges that at all times herein relevant, Defendants represented they did business from the Judicial District in which this Court is located and over which this Court has primary jurisdiction for disputes of the nature of those that are set forth more particularly herein below.

## III. PARTIES

3. Plaintiff at all relevant times mentioned herein, was and is an individual doing business in the State of California, County of Santa Clara.

4. Defendant, INTERMEX PRODUCTS USA, LTD. (hereinafter "INTERMEX") at all relevant times mentioned herein, was and is a Texas entity doing business in the State of California without registration with the California Secretary of State.

5. Defendant, PEPPERS UNLIMITED, INC. (hereinafter "PEPPERS") at all relevant times mentioned herein was not at all times relevant properly registered to do business in California but is now registered to do business in the State of California, and at all times relevant conducting business or representing itself as conducting business in this Judicial District.

6. Defendant, JUAN CARLOS LORENZO (hereinafter "LORENZO") at all relevant times mentioned herein was a resident of the State of Texas conducting substantial business within the State of California.

///

7. Defendant, JOHN BRANCH (hereinafter "BRANCH") at all relevant times mentioned herein was a resident of the State of Texas conducting substantial business within the State of California.

8. Defendant, DIEGO LORENZO (hereinafter "DIEGO") at all relevant times mentioned herein was a resident of the State of Texas conducting substantial business within the State of California.

9. The true names and capacities, whether individual, corporate, associate or otherwise, and the true involvement of Defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names and will amend this Complaint to show their true names, capacities and involvement, when ascertained. Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a Doe is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged.

10. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants sued herein was the agent and/or employer of each of the remaining Defendants, and each of them, was at all times acting within the purpose and scope of such agency and employment.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

11. In approximately January 2016, Plaintiff and Defendants entered into an agreement evidenced by various invoices (the "Contract") for the purchase and sale of produce. Attached hereto as **Exhibit "A"** are true and correct copies of available, relevant invoices.

12. Pursuant to the Contract, Defendants were to sell Plaintiff produce which was primarily comprised of whole tomatillos, crushed tomatillos, jalapenos, red sauce, green sauce and chipotles (the "Produce").

13. Plaintiff paid every invoice.

14. Plaintiff has been a co-packer of produce for private labels in excess of ten (10)

3

years.

15. Plaintiff had cultivated business relationships as a supplier with premier food distributors throughout the United States, including but not limited to Sysco Foods, Cash and Carry, Jalimex, Rio Verde Food, etc. ("Vendors") and was known to them by the trade name Carmelitas Original Salsas or Tomas Foods.

16. INTERMEX was aware of Plaintiff's relationships and Plaintiff was solicited by a representative of INTERMEX offering to supply the Produce for sale to Vendors.

17. In late 2015/early 2016, Plaintiff placed an order for Produce and was invoiced for the purchase.

18. Thereafter, LORENZO and DIEGO requested a meeting with Plaintiff, which ultimately occurred in San Diego, California.

19. LORENZO and DIEGO represented their ability to satisfy future order demands of Produce in substantial quantities.

20. Within six (6) months, Plaintiff ordered and paid for approximately $675,000.00 of Produce, which was shipped to a United States Customs approved warehouse in Texas.

21. All produce was shipped from Mexico by Defendants to Defendants' receiving warehouse in Texas where Plaintiff took possession and throughout the United States, however at all times Plaintiff believed he was dealing with Defendants in California who were operating from Fontana, California (See **Exhibit "B"**)

22. By late summer 2016, Plaintiff became aware of serious defects of the canned whole and crushed tomatillo products which were brought to Plaintiff's attention by the largest of customers with whom Plaintiff had an excellent business relationship (example, Sysco Foods of Los Angeles).

23. The condition of the whole tomatillos purchased from Defendants and shipped to Sysco Foods of Los Angeles was unmerchantable.

24. The Produce in question was contaminated, brown, spoiled, watery, low in content

4

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; EXPRESS WARRANTIES; AND FRAUD

of tomatillos and improperly canned, specifically the whole and crushed tomatillos. The Produce was rotten, smelled foul and was discolored.

25. The whole and crushed tomatillos did not meet the specific characteristics of being green in color, uniform in texture, firm and crisp.

26. By this time, Produce had been shipped to multiple locations throughout the United States.

27. By September 2016, Plaintiff raised concerns and in response, DIEGO, offering false assurances that the matter would be corrected immediately, represented that he obtained production records and was researching.

28. Thereafter, Plaintiff attempted to meet with Defendants in Southern California and Defendants refused to meet, instead responding with subterfuge.

29. Defendants represented their desire to complete testing of the Produce, yet no such testing was ever conducted. In fact, Defendants refused to participate in the expense incurred by Plaintiff during testing of the Produce by Plaintiff (notwithstanding Plaintiff's request that Defendants jointly test the Produce).

30. Defendants then commenced with a series of false representations, including but not limited to, asserting that they had legitimate production records that evidenced that the cans of tomatillos contained an average of 42 tomatillos per can.

31. Defendants then asserted that Plaintiff's claims regarding the defective condition of the Produce was false.

32. Refusing to accept any responsibility for the condition of the Produce, Defendants offered to return a fraction of the approximately $675,000.00 paid to Defendants if Plaintiff executed a release of any claims, disregarding the fact that the general public might suffer serious injury.

33. When Plaintiff advised that it intended to liquidate all Produce to cover for losses, Defendants offered to pay the sum of approximately $172,000.00 and to permit Plaintiff to

5

pursue all claims and damages.

34. Pursuant to the Agreement, Defendants agreed to indemnify Plaintiff from third party claims.

## V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Breach of Contract)

35. Plaintiff incorporates Paragraphs 1 through 34 of this Complaint, by this reference, as if each of these paragraphs were set forth here in its entirety.

36. Commencing in approximately January 2016, Plaintiff and Defendants entered into an agreement with purchase orders and invoices for the sale of Produce (hereinafter referred to as the "Contract").

37. Implied by such Contract was a term that Defendants, in good faith, would provide Plaintiff with uncontaminated and properly canned food product.

38. Plaintiff, relying on representation from Defendants submitted payment for the tomatillo food product they were to receive pursuant to the Contract.

39. Defendants knew the Produce was specially manufactured for the Plaintiff and the Produce was not suitable for sale to others in the ordinary course of the Defendants' business and the Defendants, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement.

40. Defendants failed and breached their contractual obligation to provide Plaintiff with uncontaminated Produce.

41. Defendants breached their contractual obligations and to deliver Produce properly canned both in terms of the quantity and quality.

42. Plaintiff performed all conditions and promises required by it in connection with the terms of the Contract.

43. By reason of Defendants' breach of the obligation to provide Plaintiff with uncontaminated and properly canned food product, Plaintiff incurred tremendous financial losses and destroyed the Carmelita's name brand also causing him to suffer substantial economic damages. Plaintiff has suffered damage in the sum of a at least $6,500,000.00.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

44. Plaintiff incorporates Paragraphs 1 through 43 of this Complaint, by this reference, as if each of these paragraphs were set forth here in its entirety.

45. By offering food products for sale to the Plaintiff, Defendants impliedly warranted that such food products were safe to eat, were not adulterated with mold, discoloration, foul odor, and that the food products had been safely prepared under sanitary conditions.

46. Defendants breached their implied warranty of merchantability and fitness for a particular purpose regarding the Produce canned and manufactured and sold to Plaintiff causing Plaintiff's economic injuries and losses.

47. Defendants are liable to Plaintiff for breaching their implied warranties that they made regarding the contaminated and improperly canned product that caused Plaintiff's injuries. The implied warranties included the implied warranties, through its sale of the Produce by the statements and conduct of its employees and agents, that the Produce it sold and distributed was fit for human consumption and not otherwise adulterated or injurious to health.

48. The contaminated and improperly canned Produce that caused Plaintiff's injuries would not pass without exception in the trade, and the sale of that contaminated Produce was, therefore, in breach of the implied warranty of merchantability.

49. The contaminated and improperly canned food product that caused Plaintiff's injuries was not fit for the uses and purposes intended, i.e. human consumption, and the sale of the contaminated and improperly canned food product was therefore in breach of the implied warranty of fitness for its intended use.

50. As a direct and proximate result of Defendants' breach of express and implied warranties regarding the contaminated Produce, Plaintiff incurred tremendous financial losses and destroyed the Carmelita's name brand also causing him to suffer substantial economic damages.

## THIRD CAUSE OF ACTION

### (Express Warranties)

51. Plaintiff incorporates Paragraphs 1 through 50 of this Complaint, by this reference, as if each of these paragraphs were set forth here in its entirety.

52. At the time Defendants offered to supply the Produce to the Plaintiff, Defendants expressly warranted that such food products were fresh, properly colored and would be delivered in proper quantities per can and that the food products had been safely prepared under sanitary conditions.

53. Defendants breached their express warranties regarding the Produce canned and manufactured and sold to Plaintiff causing Plaintiff's economic injuries and losses.

54. Defendants are liable to Plaintiff for breaching express warranties that they made regarding the contaminated and improperly canned Produce that caused Plaintiff's economic injuries. These express warranties included representations by the Defendants that the Produce they sold and distributed was fit for human consumption and not otherwise adulterated or injurious to health.

55. The contaminated and improperly canned Produce that caused Plaintiff's injuries would not pass without exception in the trade, and the sale of that contaminated Produce was, therefore, in breach of the express warranties contained herein.

56. As a direct and proximate result of Defendants' breach of express and implied warranties regarding the contaminate Produce, Plaintiff incurred tremendous financial losses and destroyed the Carmelita's name brand also causing him to suffer substantial economic damages.

///

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; EXPRESS WARRANTIES; AND FRAUD

## FOURTH CAUSE OF ACTION

### (Fraud)

57. Plaintiff incorporates Paragraphs 1 through 56 of this Complaint, by this reference, as if each of these paragraphs were set forth here in its entirety.

58. At the time Defendants agreed to sell the Produce to Plaintiff, Defendants represented to Plaintiff that they had the ability to deliver canned Produce in a merchantable manner but failed to disclose that they did not have the ability nor had they ever manufactured or canned produce in the quantities promised to Plaintiff.

59. Plaintiff further is informed that Defendants sold existing, aged, canned product that was not freshly picked and canned because of its inability to satisfy the orders promised to Plaintiff.

60. Defendants either knew they could not satisfy Plaintiff's quantity demands and realized they had existing, aged, canned product but still represented to Plaintiff they could satisfy Plaintiff's demand knowing the representation was false or had no reasonable basis to believe that the representation was true.

61. Defendants made these representations with the intent to deceive and defraud and to include Plaintiff to act in reliance.

62. Plaintiff did act in reliance and purchased the Produce believing that there would be delivery of the Produce in a merchantable condition.

63. As a proximate result of the fraudulent conduct for financial gain, Plaintiff incurred tremendous financial losses and destroyed the Carmelita's name brand also causing him to suffer substantial economic damages in excess of $6,500,000.00.

64. The aforementioned conduct of the Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendant thereby depriving the Plaintiff of legal tender or legal rights or otherwise causing injury and was despicable conduct that subjected the Plaintiff to a

9

cruel and unjust hardship in conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth below:

1. For general damages according to law and proof;
2. For special damages according to law and proof;
3. For consequential damages pursuant to UCC 2-714 and 2-715;
4. For reasonable attorneys' fees and costs of suit;
5. For punitive damages;
6. For pre-judgment interest of ten percent (10%) or the highest legal rate pursuant to CCP §998 and Civil Code §3291; also, for interest from the date of prejudgment; and
7. For such other and further relief as the Court may deem proper.

Dated: August 2, 2019

Respectfully Submitted,

MICHAEL S. WARDA,
A Professional Law Corporation

By: /s/ Michael S. Warda
Michael S. Warda, Esq.
Attorney for Plaintiff,
TOMAS TRUJILLO dba
CARMELITAS ORIGINAL SALSAS

# EXHIBIT "A"



Peppers Unlimited, Inc.
1375 Avenue S
Suite 300
GRAND PRAIRIE, TX 75050

# INVOICE

Page: 1

| | |
|---|---|
| Invoice Number: | SI000323 |
| Invoice Date: | 4/29/2016 |

Bill To: Carmelitas Original Salsa / Tomas Foods
14705 Center Ave
San Martin, CA 95046
United States of America

Ship To: LAREDO FOB PICKUP

| | |
|---|---|
| Customer ID | C00055 |
| P.O. Number | |
| P.O. Date | 4/29/2016 |
| Our Order No. | SO100332 |
| SalesPerson | |

Ship Via
Ship Date      5/3/2016
Due Date      4/29/2016
Terms          DUE ON RECEIPT

| Item/Description | Unit | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| F0045 CARMELITAS GREEN SAUCE 6/#10 | Case | 994 | 994 | 19.00 | 18,886.00 |

Lot No.:  AU8S4 (103 CS), AU4W6 (891 CS)

| | | | |
|---|---|---|---|
| Amount Subject to Sales Tax | 0 | Subtotal: | 18,886.00 |
| Amount Exempt from Sales Tax | 18,886.00 | Invoice Discount: | 0.00 |
| | | Tax: | 0.00 |
| | | Freight: | 0.00 |
| | | Allowance: | 0.00 |
| | | **Total:** | **18,886.00** |



Peppers Unlimited, Inc.
1375 Avenue S
Suite 300
GRAND PRAIRIE, TX  75050

# INVOICE

Page: 1

| | | |
|---|---|---|
| | Invoice Number: | SI000319 |
| | Invoice Date: | 4/29/2016 |

Bill To: Carmelitas Original Salsa / Tomas Foods
14705 Center Ave
San Martin, CA  95046
United States of America

Ship To: LAREDO FOB PICKUP

| | |
|---|---|
| Customer ID | C00055 |
| P.O. Number | |
| P.O. Date | 4/29/2016 |
| Our Order No. | SO100328 |
| SalesPerson | |

Ship Via
Ship Date     4/29/2016
Due Date      4/29/2016
Terms         DUE ON RECEIPT

| Item/Description | Unit | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| F0042 CARMELITAS ORIGINAL SALSA CRUSHED TOMATILLO 6/#10 | Case | 1,008 | 1,008 | 18.25 | 18,396.00 |

Lot No.:    AU2L6 (563 CS), AU2M6 (445 CS)

| | | | |
|---|---|---|---|
| Amount Subject to Sales Tax | 0 | Subtotal: | 18,396.00 |
| Amount Exempt from Sales Tax | 18,396.00 | Invoice Discount: | 0.00 |
| | | Tax: | 0.00 |
| | | Freight: | 0.00 |
| | | Allowance: | 0.00 |
| | | **Total:** | **18,396.00** |



Peppers Unlimited, Inc.
1375 Avenue S
Suite 300
GRAND PRAIRIE, TX 75050

# INVOICE

Page: 1

| | |
|---|---|
| Invoice Number: | SI000336 |
| Invoice Date: | 5/4/2016 |

Bill To: Carmelitas Original Salsa / Tomas Foods
14705 Center Ave
San Martin, CA 95046
United States of America

Ship To: LAREDO FOB PICKUP

| | |
|---|---|
| Customer ID | C00055 |
| P.O. Number | |
| P.O. Date | 5/13/2016 |
| Our Order No. | SO100348 |
| SalesPerson | |

Ship Via
Ship Date    5/13/2016
Due Date     5/4/2016
Terms        DUE ON RECEIPT

| Item/Description | Unit | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| F0042 CARMELITAS ORIGINAL SALSA CRUSHED TOMATILLO 6/#10 | Case | 1,008 | 1,008 | 18.25 | 18,396.00 |

Lot No.:    AU2S6 (1,008 CS)

Amount Subject to Sales Tax    0
Amount Exempt from Sales Tax   18,396.00

| | |
|---|---|
| Subtotal: | 18,396.00 |
| Invoice Discount: | 0.00 |
| Tax: | 0.00 |
| Freight: | 0.00 |
| Allowance: | 0.00 |
| Total: | 18,396.00 |



Peppers Unlimited, Inc.
1375 Avenue S
Suite 300
GRAND PRAIRIE, TX  75050

# INVOICE

Page: 1

|  |  |
|---|---|
| Invoice Number: | SI000337 |
| Invoice Date: | 5/5/2016 |

Bill To: Carmelitas Original Salsa / Tomas Foods
14705 Center Ave
San Martin, CA  95046
United States of America

Ship To: LAREDO FOB PICKUP

|  |  |
|---|---|
| Customer ID | C00055 |
| P.O. Number |  |
| P.O. Date | 5/13/2016 |
| Our Order No. | SO100349 |
| SalesPerson |  |

| Ship Via |  |
|---|---|
| Ship Date | 5/13/2016 |
| Due Date | 5/5/2016 |
| Terms | DUE ON RECEIPT |

| Item/Description | Unit | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| F0042  CARMELITAS ORIGINAL SALSA CRUSHED TOMATILLO 6/#10 | Case | 1,008 | 1,008 | 18.25 | 18,396.00 |

Lot No.:   AU2D6 (234 CS), AU2E6 (606 CS), AU2S6 (168 CS)

| Amount Subject to Sales Tax | 0 |
|---|---|
| Amount Exempt from Sales Tax | 18,396.00 |

|  |  |
|---|---|
| Subtotal: | 18,396.00 |
| Invoice Discount: | 0.00 |
| Tax: | 0.00 |
| Freight: | 0.00 |
| Allowance: | 0.00 |
| **Total:** | **18,396.00** |



Peppers Unlimited, Inc.
1375 Avenue S
Suite 300
GRAND PRAIRIE, TX 75050

# INVOICE

Page: 1

| | | | | Invoice Number: | SI000338 |
| | | | | Invoice Date: | 5/10/2016 |

Bill To: Carmelitas Original Salsa / Tomas Foods
14705 Center Ave
San Martin, CA 95046
United States of America

Ship To: LAREDO FOB PICKUP

| | | Customer ID | C00055 |
| | | P.O. Number | |
| Ship Via | | P.O. Date | 5/13/2016 |
| Ship Date | 5/13/2016 | Our Order No. | SO100350 |
| Due Date | 5/10/2016 | SalesPerson | |
| Terms | DUE ON RECEIPT | | |

| Item/Description | Unit | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| F0045<br>CARMELITAS GREEN SAUCE 6/#10 | Case | 1,008 | 1,008 | 19.00 | 19,152.00 |

Lot No.: AU8S4 (22 CS), AU4U6 (85 CS), 4W6AU (901 CS)

| Amount Subject to Sales Tax | 0 | | Subtotal: | 19,152.00 |
| Amount Exempt from Sales Tax | 19,152.00 | | Invoice Discount: | 0.00 |
| | | | Tax: | 0.00 |
| | | | Freight: | 0.00 |
| | | | Allowance: | 0.00 |
| | | | **Total:** | **19,152.00** |

# EXHIBIT "B"



